# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 46882

|  |  |  |
|---|---|---|
| TRACY TUCKER, JASON SHARP, NAOMI MORLEY, and JEREMY PAYNE, on behalf of themselves and all others similarly situated, | ) ) ) ) | Boise, November 2020 Term |
| Plaintiffs-Appellants, | ) ) | Opinion filed: April 8, 2021 |
| v. | ) ) | Melanie Gagnepain, Clerk |
| STATE OF IDAHO; DARRELL G. BOLZ, in his official capacity as Chair of the Idaho State Public Defense Commission; ERIC FREDERICKSEN, in his official capacity as a member of the Idaho State Public Defense Commission; PAIGE NOLTA, in her official capacity as a member of the Idaho State Public Defense Commission; ANGELA BARKELL, in her official capacity as a member of the Idaho State Public Defense Commission; DAN DINNING, in his official capacity as a member of the Idaho State Public Defense Commission; JONATHAN LOSCHI, in his official capacity as a member of the Idaho State Public Defense Commission; SEN. CHUCK WINDER, in his official capacity as a member of the Idaho State Public Defense Commission; REP. MELISSA WINTROW, in her official capacity as a member of the Idaho State Public Defense Commission; and HON. LINDA COPPLE TROUT, in her official capacity as a member of the Idaho State Public Defense Commission, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |  |
| Defendants-Respondents. | ) ) |  |

Permissive Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Samuel Hoagland, District Judge.

Issues regarding the appropriate legal standard to be applied at trial answered.

American Civil Liberties Union of Idaho Foundation, Boise; American Civil Liberties Union Foundation, New York; Hogan Lovells US LLP, Washington DC, for Appellants. Elizabeth Lockwood argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondents State of Idaho, Hon. Linda Copple Trout, Darrel G. Bolz, Angela Barkell, Sen. Chuck Winder, Rep. Melissa Wintrow and Dan Dinning. Leslie Hayes argued.

1

Parsons, Behle & Latimer as Special Deputy Attorney General, Boise, for Respondents Eric Don Fredericksen, Paige Nolta, and Jonathan Loschi. Leslie Hayes argued.

---

MOELLER, Justice

This case concerns a systemic challenge to Idaho's public defense system and asks the Court to answer two overriding questions: (1) what is the proper legal standard to be applied to the plaintiffs' claims at trial, and (2) what is the burden of the respective parties going forward?

The plaintiffs are indigent defendants represented in criminal actions by attorneys provided through Idaho's public defense system. They allege that numerous inadequacies in Idaho's public defense system, as administered by the State and the Idaho Public Defense Commission ("PDC" or together "Respondents"), violate the rights of the named plaintiffs, as well as those of similarly situated criminal defendants across Idaho, under the Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 13 of the Idaho Constitution. On March 19, 2019, the district court denied cross motions for summary judgment, citing a lack of precedent as to the controlling legal standard to be applied, and requested this appeal. On April 11, 2019, the Idaho Supreme Court granted the district court's request for permissive appeal to determine the standard of review.

The crux of the issue comes down to how to properly evaluate the deficiencies in Idaho's public defense systems alleged by Appellants. In sum, Appellants insist that the view from 30,000 feet is sufficient, while Respondents demand that the district court examine this issue from three feet away. For the reasons set forth herein, we hold that both views are necessary. A close up view, which allows for greater specificity, must be applied to the individual claims of at least one of the named plaintiffs whose allegations formed the basis of standing; however, a more distant view, which allows for greater overall perspective, is permissible for the examination of the systemic constitutional shortcomings alleged by Appellants.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In June 2015, four named plaintiffs—Tracy Tucker, Jason Sharp, Naomi Morley, and Jeremy Payne ("Appellants")—filed suit in Ada County on behalf of themselves and all similarly situated indigent criminal defendants. They allege that Idaho's public defense system violates the Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 13 of the Idaho Constitution. Appellants seek equitable relief, including a declaration that Idaho's public defense

2

system is unconstitutional and an injunction requiring Respondents to bring Idaho's public defense system into constitutional compliance.

The suit named the State of Idaho, then-Governor C.L. "Butch" Otter, and the seven members of the PDC (it now consists of nine members) as defendants. The PDC was created in 2014 pursuant to Idaho Code section 19-849, and its duties include the promulgation of rules concerning: (1) the "[t]raining and continuing legal education" of defense attorneys, (2) "[u]niform data reporting requirements … which shall include, but not be limited to, caseload, workload and expenditures," and (3) "[p]rocedures for the oversight, implementation, enforcement and modification of indigent defense standards so that the right to counsel of indigent persons, … is constitutionally delivered to all indigent persons in this state." I.C. § 19-850(1)(a)(i), (ii), and (vi). Additionally, the PDC conducts oversight by "[r]eview[ing] indigent defense providers and defending attorneys to evaluate compliance with indigent defense standards and the terms of state indigent defense financial assistance." I.C. § 19-850(1)(c).

In January 2016, the district court held that Appellants' claims were not justiciable based on standing, ripeness, and separation of powers and dismissed the complaint. On appeal to the Idaho Supreme Court, this Court affirmed the dismissal of the claims related to the Governor; however, we reversed the district court and held that the remaining claims could proceed against the State, as it bears ultimate responsibility for the public defense system, and against the members of the PDC, as related to the agency's rulemaking authority. *Tucker v. State*, 162 Idaho 11, 394 P.3d 54 (2017) ("*Tucker I*"). This Court further held that Appellant's claims did not implicate *Strickland v. Washington*, 466 U.S. 668 (1984), and its case-by-case ineffective assistance of counsel analysis. *Tucker I* at 19–20, 394 P.3d at 62–63. We went on to conclude that "Appellants satisfy the injury in fact standard because the complaint alleged actual and constructive denials of counsel at critical stages of the prosecution." *Id*. at 20, 394 P.3d at 63.

Following remand, the district court granted Appellants' Motion for Class Certification on January 17, 2018. The certified class[1] is defined as follows:

> [A]ll indigent persons who are now or who will be under formal charge before a state court in Idaho of having committed any offense, the penalty for which includes the possibility of confinement, incarceration, imprisonment, or detention in a correction facility (regardless of whether actually imposed) and who are unable to provide for the full payment of an attorney and all other necessary expenses of representation in defending against the charge.

---

[1] The term "Appellants," as used in this opinion, will also encompass members of the certified class.

3

In late 2018, both Appellants and Respondents filed cross motions for summary judgment. On March 19, 2019, the district court denied both motions and sua sponte authorized a permissive appeal to this Court to determine the standard to be applied. The Idaho Supreme Court granted permission to appeal on April 11, 2019, stating: "The singular issue to be presented to the Court is, what is the standard to be used in a lawsuit challenging the public defense system for the State of Idaho? What is the burden of the respective parties going forward?" The issue is one of first impression for the Idaho Supreme Court.

## II. STANDARD OF REVIEW

Idaho Appellate Rule 12 sets forth the standard for granting permissive appeals, providing in part:

> Permission may be granted by the Supreme Court to appeal from an interlocutory order or decree of a district court in a civil or criminal action . . . , which is not otherwise appealable under these rules but which involves a controlling question of law as to which there is substantial grounds for difference of opinion and in which an immediate appeal from the order or decree may materially advance the orderly resolution of the litigation.

I.A.R. 12(a). "[T]he intent of I.A.R. 12 [is] to provide an immediate appeal from an interlocutory order if substantial legal issues of great public interest or legal questions of first impression are involved." *Aardema v. U.S. Dairy Sys., Inc.*, 147 Idaho 785, 789, 215 P.3d 505, 509 (2009) (internal quotation omitted).

"Because a permissive appeal under I.A.R. 12 from a denial of a motion for summary judgment leads to such an unusual procedural posture, this Court must 'rule narrowly and address only the precise question that was framed by the motion and answered by the trial court.' " *Miller v. Idaho State Patrol*, 150 Idaho 856, 863, 252 P.3d 1274, 1281 (2011) (quoting *Aaradema*, 147 Idaho at 789, 215 P.3d at 509). After this Court accepts a permissive appeal, it proceeds in the same manner as an appeal as a matter of right, unless this Court orders otherwise. I.A.R. 12(d).

## III. ANALYSIS

Appellants allege systemic deficiencies in Idaho's public defense system resulting in unconstitutional denials of counsel, and they seek declaratory and injunctive relief against the State and the PDC. We have granted permissive appeal for the purpose of setting forth the standard of proof Appellants must meet at trial to prove these allegations and obtain the relief they are seeking.

### A. *Tucker I* and its aftermath.

In *Tucker I*, we acknowledged that *Gideon v. Wainwright*, 372 U.S. 335 (1963), and *State v. Monroy*, 37 Idaho 684, 690, 217 P. 611, 614 (1923), manifest the State's obligation "to provide constitutionally adequate public defense at critical stages of the prosecution." *Tucker I*, 162 Idaho at 19–20, 394 P.3d at 62–63. Importantly, *Tucker I* primarily addressed the question of standing. We held that to have standing to seek injunctive relief, plaintiffs would need to meet the injunctive relief standard from *City of Los Angeles v. Lyons*, 461 U.S. 95, 102–03 (1983), which requires plaintiffs to demonstrate "a likelihood of repeated injury or future harm to the plaintiff in the absence of the injunction." *Id*. at 19, 394 P.3d at 62. Other states deciding analogous challenges to their public defense systems similarly have held that plaintiffs must show a "likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law." *See, e.g. Luckey v. Harris*, 860 F.2d 1012, 1017 (11th Cir. 1988); *Kuren v. Luzerne Cty.*, 146 A.3d 715, 744 (Pa. 2016). Standing is a preliminary question, which allows a court to consider—before reaching the merits of the case—whether the type of injury described in the complaint warrants judicial intervention. *State v. Philip Morris, Inc.*, 158 Idaho 874, 881, 354 P.3d 187, 194 (2015). Under the traditional standing analysis, this means "the plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'like[lihood]' that the injury 'will be redressed by a favorable decision.' " *Tucker*, 162 Idaho at 19, 394 P.3d at 62 (quoting *Philip Morris*, 158 Idaho at 881, 354 P.3d at 194 (citation omitted)).

*Tucker I* considered, in part, whether plaintiffs had established an injury in fact for the purpose of satisfying standing. The State argued this should require proof of injury as defined in *Strickland*: that counsel's performance (1) was deficient and (2) prejudiced the defendant. However, we disagreed, noting that *Strickland* applies to individual claims for individual relief. In a case such as this one, where Appellants ask for no individual relief, for standing purposes an injury in fact must "be 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " *Id.* (quoting *Philip Morris*, 158 Idaho at 881, 354 P.3d at 194 (citation omitted)). We held that plaintiffs had satisfied the injury-in-fact requirement for standing because the State is constitutionally obligated to provide adequate public defense at critical stages of the prosecution, and named plaintiffs alleged they had suffered actual and constructive denials of counsel at critical stages of the prosecution. *Id.* at 19–20, 394 P.3d at 62–63. Thus, plaintiffs had alleged a qualifying injury, caused by the State, and which could be redressed by the courts.

We held the district court had erred in determining plaintiffs could not establish an injury in fact because the district court had improperly defined the alleged injury under *Strickland*. *Strickland* applies to *individual* ineffective assistance of counsel claims and allows a court to vacate a conviction only where it finds counsel's performance (1) was deficient, and (2) prejudiced the defendant. *Id.* We noted that the *Strickland* Court made clear this inquiry was to be case- and fact-specific. *Id.* (citing *Strickland*, 466 U.S. at 687–88). In the present class action, where Appellants ask for no individual relief but instead "seek to effect systemic reform" by way of prospective injunctive relief, we found a *Strickland*-type individualized analysis to be inapplicable. *Id.* In short, because Appellants were not asking to have individual sentences vacated, it was inappropriate to ask them to prove individual attorney performance had prejudiced their individual cases. We held Appellants had satisfied the injury in fact requirement for establishing standing on a *systemic* basis:

> Alleging systemic inadequacies in a public defense system results in actual or constructive denials of counsel at critical stages of the prosecution suffices to show an injury in fact to establish standing in a suit for deprivation of constitutional rights. . . . As a result, we conclude Appellants satisfy the injury in fact standard because the complaint alleged actual and constructive denials of counsel at critical stages of the prosecution.

*Id.* at 20, 394 P.3d at 63 (citations omitted). For the definition of the injury in fact alleged by plaintiffs—actual or constructive denial of counsel at a critical stage in the prosecution—we cited *United States v. Cronic*, 466 U.S. 648, 658–60 (1984): (1) "A criminal defendant who is entitled to counsel but goes unrepresented at a critical stage of prosecution suffers an actual denial of counsel and is entitled to a presumption of prejudice"; and (2) "[a] constructive denial of counsel occurs when 'although counsel is available to assist the accused during the trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial.' " *Tucker I*, 162 Idaho at 20, 394 P.3d at 63.

Because this is a class action suit, where the named plaintiffs represent an unnamed plaintiff class, we noted that the requirement of standing is met "if at least one named plaintiff satisfies the requirements of standing against every named defendant." *Id.* (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011); *Henry v. Circus Circus Casinos, Inc.*, 223 F.R.D. 541, 544 (D. Nev. 2004)). This reflects the representative nature of class actions, which

helps to promote judicial economy and fairness by decreasing duplicative litigation and increasing access to the courts for individuals who might not be able to pursue litigation on their own. *See Bush v. Upper Valley Telecable Co.*, 96 Idaho 83, 89, 524 P.2d 1055, 1061 (1973). Therefore, at the merits stage, Appellants will still need to prove what they alleged in order to have standing: that at least *one named member* of the plaintiff class has suffered injuries of the type alleged in the complaint. Here, plaintiffs have alleged actual and constructive denials of counsel that occurred in the past, caused by structural deficiencies in the public defense system. They must then demonstrate this is true for at least one named plaintiff to satisfy the requirement of standing. However, once standing is established, the standing requirement does not define the standard for the entire litigation—which is the issue we now address.

### B. The legal standard to be applied to Appellants' Claims.

Article V, Section 2 of the Idaho Constitution provides that Idaho's "courts shall constitute a unified and integrated judicial system for administration and supervision by the Supreme Court." We note at the outset that inherent within this Court's constitutionally granted supervisory powers and duties is the responsibility to oversee and regulate the practice of law in Idaho. We have previously explained:

> The practice of law is so intimately connected with the exercise of judicial power in the administration of justice that the right to define and regulate the practice naturally and logically belongs to the judicial department of the state government. Under the doctrine of separation of powers the courts have inherent power to regulate admission to the practice of law, to oversee the conduct of attorneys as officers of the court, and to control and supervise the practice of law generally, whether in or out of court. It is a prerogative of the judicial department to regulate the practice of law. However, the state has a substantial interest in maintaining a competent bar, and the legislature, under the police power, may act to protect the public interest, but in so doing, it acts in aid of the judiciary and does not supersede or detract from the power of the courts.

*Idaho State Bar Ass'n v. Idaho Pub. Utilities Comm'n*, 102 Idaho 672, 675, 637 P.2d 1168, 1171 (1981) (quoting 7 Am.Jur.2d, *Attorneys at Law*, § 2, p. 55-56)). Additionally, the legislature has described the Supreme Court's role in regulating the manner in which legal services are provided in Idaho as a "supervisory power." I.C. § 3-408 (heading).

While our own constitutional obligation to govern the practice of law does not change how we consider the present argument, it does highlight that it is appropriate for us to answer the questions for which we granted this limited permissive appeal:

7

(1) What is the standard to be used in a lawsuit challenging the public defense system for the State of Idaho?

(2) What is the burden of the respective parties going forward?

Inasmuch as we have recognized that there is a "substantial state interest in maintaining a competent bar," we must not shirk that duty here. *Idaho State Bar Ass'n*, 102 Idaho at 675, 637 P.2d at 1171.

### 1. Injunctive relief requires a likelihood of future harm in the absence of the injunction.

As noted, our standing analysis in *Tucker I* cited the general standard for equitable relief from *Lyons*: "In order to have standing to seek injunctive relief, a plaintiff must demonstrate a likelihood of repeated injury or future harm to the plaintiff in the absence of the injunction." *Tucker I*, 162 Idaho at 19, 394 P.3d at 62 (citing *Lyons*, 461 U.S. at 102–03). This standard is echoed by other courts deciding analogous challenges to their public defense systems, which hold that plaintiffs must show a "likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law." *See Luckey v. Harris*, 860 F.2d at 1017–18; *Kuren v. Luzerne Cty.*, 146 A.3d at 744. The U.S. Supreme Court also stated in *Lyons* that "[p]ast wrongs were *evidence bearing on* whether there is a real and immediate threat of repeated injury." *Lyons,* 461 U.S. at 102, (emphasis added) (internal quotation omitted). However, the Court emphasized that proving a threat of future harm defines whether injunctive relief is justified. *Id.*

We have also observed that "[t]he object of injunctive relief is to prevent injury, threatened and probable to result, unless interrupted." *Miller v. Ririe Joint School District No. 252*, 132 Idaho 385, 388, 973 P.2d 156, 159 (1999) (internal citation omitted). Previously, we have found that probable future injury can satisfy the injunctive relief standard. *Id.* In *Miller*, the district court had granted an injunction against attorneys for a school district under a section 1983 procedural due process claim to keep them from participating in a discharge proceeding against Miller that the court deemed biased, but the court denied Miller attorney fees. *Id.* On appeal, the school district argued the injunction—based on the "mere appearance of impropriety of the School District Attorneys"—did not establish Miller actually had been injured, and as a result she did not meet the injury in fact requirement for standing. *Id.* at 388, 973 P.2d at 159. However, this Court held Miller had established injury, observing that the district court's injunction meant "a real threat to Miller must have been imminent" and that *imminent* in this injunctive relief context required showing only a *probability* that a decision-maker would decide an issue unfairly. *Id.* at 388–89,

8

973 P.2d at 159–60. We did not require that Miller prove a past harm because the emphasis of injunctive relief is to protect against future harm, and she had demonstrated the probability of harm in the future. *Id*. at 388, 973 P.2d at 159.

In so ruling, we found the district court had correctly relied on the injury standard from *Johnson v. Bonner County School District No. 82*, 126 Idaho 490, 887 P.2d 35 (1994), which in turn relied on the U.S. Supreme Court decision in *Gibson v. Berryhill,* 411 U.S. 564 (1973). *Id.* at 388, 973 P.2d at 159. The U.S. Supreme Court in *Gibson* held the district court did not need to find actual bias by a decision-maker in an administrative procedure in order to issue an injunction; rather it was sufficient to show "an indication of a possible temptation" toward bias in an average person under the circumstances. *Miller*, 132 Idaho at 388, 973 P.2d at 159 (quoting *Gibson*, 411 U.S. at 571).

Thus, a trial court applying a general injunctive relief standard and assessing the likelihood of future injury to a party should necessarily give weight to evidence—or the absence of evidence—that the alleged inadequacies in the public defense system have resulted in the types of actual harm alleged in the past. The probative value of such evidence cannot be denied. However, *Miller* and *Gibson* point to a much broader interpretation of harm, one which focuses on probable future injury, and does not expressly require proof of past harm, except for the purpose of establishing standing.

**2.** **Analogous Sixth Amendment challenges to public defense systems in other states demonstrate that while *Cronic* defines how unconstitutional deprivations of counsel can occur generally, it does not provide the standard for how to assess those deprivations in a class action seeking prospective injunctive relief.**

In *Tucker I*, this Court found Appellants had alleged actual and constructive denials of counsel as defined in *Cronic*: (1) "A criminal defendant who is entitled to counsel but goes unrepresented at a critical stage of prosecution suffers an actual denial of counsel and is entitled to a presumption of prejudice"; and (2) "[a] constructive denial of counsel occurs when 'although counsel is available to assist the accused during the trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial.' " *Tucker I*, 162 Idaho at 20, 394 P.3d at 63 (citing *Cronic*, 466 U.S. at 659–60). Based on these definitions, this Court analyzed the deprivations of counsel described by the named Plaintiffs in the complaint and determined they had alleged sufficient "injuries that are 'concrete and particularized' and 'actual or imminent' to

9

meet the injury in fact requirement for standing." *Id.* at 21, 394 P.3d at 64. We note that in *Tucker I*, this Court analyzed the actual past deprivations of counsel alleged in the complaint; however, Appellants could have satisfied the injury requirement for standing by alleging imminent injury— i.e., imminent deprivations of counsel. *See Miller*, 132 Idaho at 388–89, 973 P.2d at 159–60.

Respondents urge that Appellants must now "prove what they have alleged" and prove systemic deficiencies have resulted in actual and constructive denials of counsel as defined in *Cronic*, and that they must do so on a systematic basis, county-by-county. Respondents would interpret injuries that are 'concrete and particularized' and 'actual or imminent' to mean injuries that have occurred in the past. Thus proof of a deficient *system* would require showing past injuries throughout various geographic corners of the public defense system, caused directly by each type of structural failing alleged. Respondents rely on *Cronic* to ask that evidence of past injury-in-fact be required from a substantial part of plaintiffs in the class. However, *Cronic*, like *Strickland*, does not provide a framework for measuring prospective claims seeking equitable relief. Instead, *Cronic* only defines what deprivations of counsel in violation of the Sixth Amendment look like—whether occurring in the past or probable to occur in the future.

*Cronic* was decided by the U.S. Supreme Court on the same day as *Strickland*, and held that post-conviction relief might be warranted absent actual prejudice in cases where a defendant could prove (1) "the complete denial of counsel" or (2) constructive denials of counsel where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 659. Like *Strickland*, the analysis under *Cronic* is individualized and fact-intensive. *See id.* at 660–61. Moreover, like *Strickland*, the *Cronic* standard analyzes a single attorney's performance post-conviction and presumes the attorney performed adequately. *Id.* at 648. This deference to attorney performance in cases that have already been finalized reflects the policy considerations at issue in overturning convictions, such as judicial economy and finality— considerations not at stake in the present case because no one is challenging the performance of a specific attorney or the conviction of a specific individual. Thus, *Cronic* defines unconstitutional deprivations of counsel, but it cannot provide a standard for how to assess those deprivations in a class action seeking prospective injunctive relief.

Several analogous Sixth Amendment challenges to state-wide public defense systems support this interpretation. We briefly summarize five often-cited cases.

### a. *Luckey v. Harris*

10

*Luckey v. Harris* presented a class-action challenge to Georgia's public defender system under the Sixth and Fourteenth Amendments. 860 F.2d at 1013. The Eleventh Circuit rejected a district court ruling that plaintiffs would need to prove "an across-the-board future inevitability of ineffective assistance" to succeed on their claims. *Id.* at 1016. Like this Court in *Tucker I*, the Eleventh Circuit distinguished injunctive relief claims from *Strickland* claims, noting that the "powerful considerations" at play when someone seeks to overturn a conviction do not apply because "[p]rospective relief is designed to avoid future harm." *Id.* at 1017. To that end, the *Luckey* court found that prospective relief did not require proving "ineffective assistance of counsel was inevitable for each of the class members," and instead applied the equitable relief standard cited by the U.S. Supreme Court in *O'Shea v. Littleton*, a class action civil rights case: "In a suit for prospective relief the plaintiff's burden is to show 'the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law.' " *Id.* at 1017–18 (citing *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)).

The Eleventh Circuit distinguished claims for injunctive relief from claims based on individual prejudice and declined to expand the *O'Shea* standard to require showing individual past harm. We find notable *Luckey*'s holding—that plaintiffs are not required to prove *inevitable* ineffective assistance of counsel for *every* class member—does not blot out the possibility plaintiffs might present *some* actual harms suffered by *some* class members. However, *Luckey* reflects an injunctive relief standard that places no express demand for such proof.

### b. *Kuren v. Luzerne*

In *Kuren v. Luzerne County*, the Pennsylvania Supreme Court pointed to alleged deficiencies in its public defense system, describing such issues as funding and caseload management, and then observed that these claims "in no way resemble" *Strickland* claims: "There is no performance by individual counsel to evaluate, nor is there a trial, the reliability of which might be questioned. There are no interests in avoiding a retrial, nor are there any decisions made by counsel that warrant deference." *Kuren* 146 A.3d at 746. The court stated *Cronic* also has limited value, because it does not address whether or how constructive denial of counsel claims can be brought in civil suits seeking prospective relief. *Id.* at 737. The Pennsylvania court summarized the essential difference: "This is a structural claim, not an individual one." *Id.* at 746.

Further, the *Kuren* court held that "[w]hen seeking prospective relief, a plaintiff need not prove actual injury. That plaintiff must only demonstrate 'the likelihood' of the injury." *Id.* at 748.

Like others, the court applied the injunctive relief standard from *O'Shea*, requiring proof of "the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law." *Id.* at 744 (citing *O'Shea*, 414 U.S. at 502, 94 S. Ct. 669). When the county argued that plaintiffs could not satisfy the standard's injury prong because the injuries claimed were conjectural and abstract, the Pennsylvania Supreme Court answered that "[t]his argument ignores the language of the *O'Shea* test." *Id.* Plaintiffs' inability to point to any specific denials of counsel was not fatal to the claim because they could demonstrate "that the system-wide deficiencies have created circumstances in which the constructive denial of counsel is imminent and likely, if not all but certain." *Id.* at 748–49.

As a framework for analyzing the injury prong, the *Kuren* court adopted factors suggested by the Department of Justice ("DOJ") in an amicus brief as a "workable, if non-exhaustive, paradigm for weighing such claims":

> (1) when, on a system-wide basis, the traditional markers of representation—such as timely and confidential consultation with clients, appropriate investigation, and meaningful adversarial testing of the prosecution's case—are absent or significantly compromised; and (2) when substantial structural limitations—such as a severe lack of resources, unreasonably high workloads, or critical understaffing of public defender offices—cause the absence or limitation on representation.

*Id.* at 744 (citing Amicus Brief for the United States at 11). This analytic framework, informed by the court's emphasis on future harm that results from structural failures, again reflects the understanding that proof of individual past harm, while probative of systemic deficiencies, is not a required element.

### c. *Hurrell-Harring*

In 2010, the New York Court of Appeals decided a similar issue in *Hurrell-Harring v. New York*, 930 N.E.2d 217, 222 (N.Y. Ct. App. 2010), finding that specific instances of prejudice are not required in cases seeking systemic, prospective relief. In 2014, the case returned to New York's highest court for a determination about the use of expert evidence in proving the likelihood of future systemic harm, and that decision further clarified the court's approach. *Hurrell-Harring v. State*, 119 A.D.3d 1052 (N.Y. Ct. App. 2014). In this later appeal, the court considered plaintiffs' motion to present expert testimony "as to the prevailing professional standards governing the provision of legal representation to indigent criminal defendants and whether the structure and operation of the public defense systems in the five counties meets those standards." *Id.* at 1052.

12

The court below had excluded the testimony, holding that interpreting these standards and whether the public defense systems could meet them was within the range of knowledge and experience of the trier of fact and, therefore, inadmissible. *Id.* at 1052–53.

The New York Court of Appeals disagreed. The high court observed in this second appeal that, although individual *Cronic*-based denial of counsel claims might fall within a justice's knowledge and experience, *Cronic* was a fundamentally different inquiry from claims alleging systemic denials of counsel. *Id.* at 1052–53. According to the *Hurrell-Harring* court, a challenge to a public defense system centered on whether systemic deficiencies, such as caseload, funding, and oversight, created a *risk* "that the basic constitutional mandate for the provision of counsel to indigent defendants at all critical stages [would be] . . . left unmet." *Id.* at 1053–54. This need for systemic risk analysis meant expert opinion was necessary:

> By virtue of their extensive experience, the experts possess specialized knowledge with respect to the operation of public defense systems, the professional standards applicable to such systems, and the impact of systemic shortcomings on the provision of counsel to indigent criminal defendants at all critical stages. Such particularized knowledge is, manifestly, beyond that of a typical [judicial trier of fact], whose experience is oft confined to case-by-case determinations.

*Id.* at 1054.

In its earlier decision in 2010, the New York Court of Appeals had observed that proving denials of counsel were systemic in the public defense system and not "simply isolated occurrences in the case of these 20 plaintiffs" was an "enormous task . . . ." The 2014 *Hurrell-Harring* decision clarified that observation: the "enormous task" is proving that systemic deficiencies exist. However systemic deficiencies require a different kind of analysis than the usual case-by-case experience of the courts. *Hurrell-Harring*, 119 A.D.3d at 1053.

### d. *Duncan v. State*

*Duncan v. State*, 774 N.W.2d 89 (Mich. App. 2009), is an exception among the cases discussed here. In *Duncan*, the Michigan Court of Appeals held that injunctive relief required proof that future harm was imminent, and explained that "harm is imminent if plaintiffs can show widespread and systemic instances of actual harm that have occurred in the past under the current indigent defense systems being employed by the counties." *Duncan v. State*, 774 N.W.2d 89, 123 (Mich. App. 2009). The decision included a detailed holding as to what qualifies as actual harm, including instances of actual prejudice as well as presumed prejudice where counsel's representation falls below objective standards at a critical stage. *Id.* at 123–24. The court rejected

any notion that *Strickland*-level prejudice must be proved, *Id.* at 126–32, and also declined to set a numerical threshold for when instances of harm would be found widespread or systemic enough to justify relief. *Id.* at 124. However, the court observed that actual prejudice would be stronger evidence than "mere deficient performance." *Id.* at 124.

Notably, the Michigan Supreme Court relied on the U.S. Supreme Court's 1996 decision in *Lewis v. Casey*, 518 U.S. 343 (1996), which reversed an injunction against Arizona prisons requiring inmate access to libraries because plaintiffs had not proved actual harm in every implicated institution. *Lewis*, 518 at 360 n.7. As the *Duncan* court points out, the inmates proved only two instances of harm, and this failure to prove widespread harm was their downfall. *Duncan*, 774 N.W.2d at 121. However the U.S. Supreme Court's 2011 decision in *Brown v. Plata*, 563 U.S. 493 (2011), which came two years after *Duncan*, clarified the harm requirement. It considered an Eighth Amendment challenge to prison conditions and held that claims against the system did not require proof of individual harm. *Brown*, 563 U.S at 505 n.3. Similar to the other Sixth Amendment challenges to public defense systems described herein, in which courts found *Strickland* inapplicable because there was no individual trial to scrutinize for prejudice, the U.S. Supreme Court found the proper inquiry for an Eighth Amendment systemic claim should consider "systemwide deficiencies, . . . taken as a whole . . . ." that subjected plaintiffs to " 'substantial risk of serious harm' and cause the delivery of care in the prisons to fall below the evolving standards of decency . . . ." *Id.*

### e. *Wilbur v. Mt. Vernon*

Finally, *Wilbur v. Mt. Vernon* is a case from the Western District of Washington. The U.S. District Court found the plaintiffs had shown "by a preponderance of the evidence, that indigent criminal defendants in [the cities of] Mount Vernon and Burlington are systematically deprived of the assistance of counsel at critical stages of the prosecution and that municipal policymakers have made deliberate choices regarding the funding, contracting, and monitoring of the public defense system that directly and predictably caused the deprivation." *Wilbur v. City of Mount Vernon*, 989 F. Supp. 2d 1122, 1124 (W.D. Wash. 2013). The evidence established that just two attorneys provided defense services for those cities. *Id.* Although both public defenders insisted "they did not feel rushed or overworked," the court found that, based on their caseloads, the services they provided to indigent clients could not have amounted to more than a "meet and plead" system in which the attorneys spent no time with clients before pleading. *Id.* In addition to their caseloads,

the court looked at data on the attorneys' case files to determine whether they had conducted investigations or other research, or filed any pre-trial motions. *Id.* at 1128.

Inasmuch as the public defense system in *Wilbur* consisted of only two attorneys, the line between whether the court's inquiry was based on the system as a whole or on specific examples of deficient individual performance is, necessarily, a little blurry. The *Wilbur* court stated that plaintiffs had succeeded in "establishing both a systemic deprivation of the right to the assistance of counsel and the Cities' responsibility for the deprivation." *Wilbur*, 989 F. Supp. at 1133. *Wilbur* did not find that plaintiffs had done this by making out sufficient *Cronic*-based claims to prove systemic harms. Instead, this case illustrates how proof of the likelihood of future harm will likely involve showing that harms have occurred in the past, even if not expressly required, and that this can be accomplished by past examples as well as an analysis of meaningful systemic data.

3. **This Court has previously held that systemic constitutional challenges do not require proof of individualized, local harm.**

Although the uncertainty concerning the legal standard and burdens to be applied to this case presents an issue of first impression, we have previously addressed a similar issue in non-Sixth Amendment civil rights cases and applied a likelihood of future harm standard. For example, this Court's decision in *Idaho Schools for Equal Educational Opportunity v. State* ("*ISEEO V*"), 142 Idaho 450, 453, 129 P.3d 1199, 1202 (2005), is particularly instructive because it illustrates how we have viewed systemic harm in a system that is overseen by the State but administered locally.

In *ISEEO V*, a class of parents challenged the State's public school system based on the Idaho Constitution's requirement that the legislature would "establish and maintain a general, uniform and thorough system of public, free common schools." 142 Idaho at 453, 129 P.3d at 1202. The district court had made several generalized factual findings, for example: "Idaho's schools, particularly those in rural areas, are stretched to the breaking point in meeting the educational needs of their charges." *Id.* at 455, 129 P.3d at 1204. The State argued that such generalizations were inapplicable, and instead the plaintiffs needed to prove "specific facts to determine if facilities in specific school districts provided a safe environment conducive to learning." *Id.* at 455, 129 P.3d at 1204. We disagreed, finding that the State's proposed approach "attempt[ed] to refocus this litigation into small, district-by-district battles instead of addressing the larger, overall issue of the Legislature's constitutional duty towards public education in Idaho." *Id.* In holding that the district court had not committed any error in making generalized findings

from the voluminous record, illustrated by some specific examples, we held that the State's proposed district-specific method "fail[ed] to grasp the relevance of the adage 'the whole is greater than the sum of its parts.' " *Id.*

As we noted in *Tucker I*, this case ultimately centers on the alleged deficiencies of a state-wide system of justice, although proof of individual harm—actual or imminent—is a procedural necessity for standing. We acknowledged this in holding that "[t]he State . . . has the ultimate responsibility to ensure that the public defense system passes constitutional muster. While the provision of public defense has been delegated to Idaho's forty-four counties under Idaho Code section 19-859, 'the ultimate responsibility for fulfilling the . . . constitutional duty cannot be delegated.' " *Tucker I*, 162 Idaho at 21, 394 P.3d at 64 (internal citation omitted). By extension, the PDC promulgates rules related to public defender training, caseloads, and workload reporting requirements that help the state-wide system to function. *Id.* at 24, 394 P.3d at 67. In many ways, the state public defense system, which is administered by counties, is analogous to the public school system in *ISEEO V*. Although individual counties—like school districts—may retain discretion over how policies are implemented to best fit local needs, the greater issue is whether the State and the PDC have provided the means, the rules, and the oversight to assure constitutional mandates are met. *See* I.C. § 19-850. For example, the PDC, like school districts, applies statewide standards to a constitutionally mandated function of government, while retaining local control over personnel decisions and paying for public defender services.

*ISEEO V* illustrates that, when there is a challenge is to a statewide system, the trier of fact may find injury based solely on generalized findings of systemic inadequacies. Our observation in *ISEEO V* that requiring specific facts to determine whether specific school districts met constitutional requirements missed the point that "the whole is greater than the sum of its parts" also applies to Respondents' proposed county-by-county look at public defense services. Requiring that Appellants prove specific constitutional violations exist in every county misses the point that the counties exist within one system, and that larger system is the subject of this case. In sum, this is an example of when the view from 30,000 feet may be far more revealing than the view from three feet.

### 4. The role of standing in establishing harm.

In *State v. Philip Morris, Inc.*, this Court observed that satisfying the injury-in-fact requirement of standing entailed more than the often cited rule, "a litigant must 'allege or

16

demonstrate an injury in fact and a substantial likelihood the relief requested will prevent or redress the claimed injury.' " *State v. Philip Morris, Inc.,* 158 Idaho 874, 881–82, 354 P.3d 187, 194–95 (quoting *Van Valkenburgh v. Citizens for Term Limits,* 135 Idaho 121, 124, 15 P.3d 1129, 1132 (2000)); *see also Camp Easton Forever, Inc. v. Inland Nw. Council Boy Scouts of Am.,* 156 Idaho 893, 897, 332 P.3d 805, 809 (2014); *Thomson v. City of Lewiston,* 137 Idaho 473, 477, 50 P.3d 488, 492 (2002); *Boundary Backpackers v. Boundary Cnty.,* 128 Idaho 371, 375, 913 P.2d 1141, 1145 (1996); *Miles,* 116 Idaho at 641, 778 P.2d at 763 (citing *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.,* 438 U.S. 59, 72, 98 (1978)). Standing also "requires a *showing* of a 'distinct palpable injury' and 'fairly traceable causal connection between the claimed injury and the challenged conduct.' " *Id.* (emphasis added) (quoting *Miles,* 116 Idaho at 639, 778 P.2d at 761). This means that standing cannot be based on "a merely hypothetical injury." *Id.* Further, "[b]ecause standing is 'not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation.' " *Camp Easton Forever*, 156 Idaho at 898, 332 P.3d at 810 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992)).

However, in a class action suit, only one named plaintiff must satisfy the standing requirements. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979 (9th Cir. 2011). The U.S. Supreme Court has stated that past harms are "evidence bearing on" whether a harm will likely be repeated, but the real emphasis is on the likelihood of future harm. *Lyons*, 461 U.S. at 102, 103 S. Ct. at 1665. Accordingly, while Appellants must prove what they alleged in their complaint in order to establish standing, this does not obligate Appellants to present specific instances of harm beyond one class representative.

Respondents also suggest Appellants may no longer have standing based on policy changes enacted by the State and PDC since this litigation began in 2015. Mootness has not been raised as an issue in this appeal; however, in *Tucker I*, after noting that there was no evidence in the record "that the PDC has carried out its mandatory rulemaking duties," we briefly discussed mootness: "If the PDC were to take action, Appellants concede their claims against the PDC may fail for either mootness or lack of proof." *Tucker I*, 162 Idaho at 28, 394 P.3d at 71, n. 9. The mootness standard in cases seeking injunctive relief is instructive. To establish mootness, the burden is on Respondents to show "there is no reasonable expectation that the wrong will be repeated."

17

*O'Boskey v. First Fed. Sav. & Loan Ass'n of Boise*, 112 Idaho 1002, 1007, 739 P.2d 301, 306 (1987) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953); *see also*, *United States v. Concentrated Phosphate Export Assoc., Inc.,* 393 U.S. 199, 203, 89 (1968) ("The test for mootness in cases such as this is a stringent one."). In other words, Respondents would be required to show that future harm is *unlikely*. The U.S. Supreme Court has cautioned, "[i]t is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption." *United States v. Oregon State Medical Society,* 343 U.S. 326, 333 (1952). We reach no conclusion as to whether Appellants' claims are moot. Rather, we simply observe that the U.S. Supreme Court's wariness of finding a claim moot, based solely on a litigant's statements that improvements and reforms have eliminated the basis of the claim, underlines that the *risk* of future harm takes on greater importance than proof of past or present actual harm.

Requiring individual harm to each of the unnamed class members also contradicts the general principles of a class action suit. When members of a common class seeking injunctive and declaratory relief are certified, this includes a finding that the named class members have established claims that are common to—and representative of—the class as a whole. *In re Carbon Dioxide Indus. Antitrust Litig.*, 155 F.R.D. 209, 212 (M.D. Fla. 1993). A court considering such a case is not required "to examine the viability or bases of class members' claims . . . , but only to look at whether class members seek uniform relief from a practice applicable to all of them." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010). If the class members sought monetary relief, then a court would have reason to require individual harm. *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1105 (5th Cir. 1993). However, those concerns do not apply to class actions seeking only declaratory and injunctive relief. *Id.* ("[Q]uestions of manageability and judicial economy are [] irrelevant to 23(b)(2) class actions.").[2] In certifying a class, the district court has already determined that the named plaintiffs' claims are typical of the class. *See* I.R.C.P. 77(a)(3) ("the claims of the representative parties are typical of the claims or defenses of the class")."The

---

[2] Federal Rule of Civil Procedure 23 is the federal counterpart to Idaho Rule of Civil Procedure 77. Both rules pertain to class action lawsuits and they contain comparable language. For example, Federal Rule 23(b)(2) provides that a class action is permissible when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole …" Idaho Rule 77(a)(3) similarly states that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if … the claims or defenses of the representative parties are typical of the claims or defenses of the class; … "

efficiencies of a class action would be thwarted if routine discovery of absent class members [was] permitted, particularly on the issue of liability." *In re Carbon Dioxide Indus. Antitrust Litig.*, 155 F.R.D. 209, 212 (M.D. Fla. 1993).

As found by the district court, the certified class here includes those who will be under charge before an Idaho state court in the future:

> [A]ll indigent persons who are now or who will be under formal charge before a state court in Idaho of having committed any offense, the penalty for which includes the possibility of confinement, incarceration, imprisonment, or detention in a correction facility (regardless of whether actually imposed) and who are unable to provide for the full payment of an attorney and all other necessary expenses of representation in defending against the charge.

Certain class members may not have been injured, and yet the "fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)." *Rodriguez*, 591 F.3d at 1125 (9th Cir. 2010).

Accordingly, Appellants must prove the allegations of harm by at least one named plaintiffs that formed the basis of standing; however, Appellants do not need to prove individual harm to unnamed class members throughout Idaho, county by county. Rather, they must prove a likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law. Evidence of the "likelihood of substantial and immediate irreparable injury" means that Appellants must establish a likelihood of future systemic harm to members of the certified class.

5. **Idaho trial courts can competently adjudicate allegations of individual *and* systemic deficiencies in a statewide system.**

Respondents question the workability of a likelihood of future harm standard, arguing that it would offer no clear guidelines to rebut the statistical evidence and expert analysis presented by Appellants, nor would it allow trial courts to assess government systems and their risk of future constitutional failures. Instead they ask this Court to require that past instances of actual and constructive denials of counsel, as defined in *Cronic*, be proved on a case-by-case basis because trial courts have been evaluating cases based on claims of individual harm for over 35 years since *Strickland*. The implication is clear: Respondents suggest that proper review of the alleged systemic deficiencies in Idaho's public defense system is beyond the capacity of a trial court.

Except for purposes of establishing standing, we find there is no merit to this contention. First, state trial courts often consider injunctive relief claims, and many have even evaluated constitutional challenges to government systems without relying on retrospective analysis of

19

individualized harm, such as in *Luckey* and *Kuren*. Likewise, this Court in *ISEEO V* held that individual, district-by-district inquiry was not required when the challenge was to a state system, and this Court did not express concern that system-wide evidence would be too onerous a burden for a district court to handle. *See ISEEO V*, 142 Idaho at 455, 129 P.3d at 1204.

Again, requiring individual *Cronic* violations would also be at odds with our holding in *Tucker I* that the *Strickland*-type individualized ineffective assistance of counsel analysis "is inapplicable when systemic deficiencies in the provision of public defense are at issue." *Tucker I*, 162 Idaho at 19, 394 P.3d at 62. At their core, both *Strickland* and *Cronic* were primarily concerned with individual attorney performance, while this case concerns a systemic challenge. Therefore, based on our holding in *Tucker I*, individual instances of deficient performance, although probative, are not determinative.

Notably, nothing will prevent Respondents from attempting to rebut Appellants' claims by presenting the type of individualized evidence they demand Appellants provide at trial, such as testimony from individual public defenders in individual counties demonstrating the sufficiency of the services they provide. These are strategic decisions the parties must make for themselves in determining how to most persuasively prove their case. We are confident that Idaho's trial courts are entirely capable of weighing such evidence and determining whether, taken as a whole, the proof rises to the level of likely future systemic harm.

### C. Attorneys' Fees on Appeal

Appellants request attorneys' fees in order to preserve their right to claim those fees, either as an interim fee award or should they later prevail on the merits of the case. *See* Idaho App. R. 41(a). The present appeal is a permissive appeal from the district court—granted at the request of the district court—solely to determine the legal standard to be applied. Because the merits of Appellants' claims still need to be addressed, we cannot yet determine a prevailing party. Accordingly, we will not consider interim appellate attorney fees at this time. *See Portfolio Recovery Assocs., LLC. v. MacDonald*, 162 Idaho 228, 236, 395 P.3d 1261, 1269 (2017) ("Because

the case is not yet resolved, there is no prevailing party. Where there is no present prevailing party, this Court has refused to award attorney's fees.")

## IV. CONCLUSION

In answering the questions upon which permissive appeal was granted—what is the proper legal standard to be applied to the plaintiffs' claims at trial and what is the burden of the respective parties going forward?—this Court holds as follows:

> To obtain declaratory or injunctive relief, Plaintiffs must prove by a preponderance of the evidence that Idaho's public defense system suffers from widespread, persistent structural deficiencies that likely will result in indigent defendants suffering actual or constructive denials of counsel at critical stages of criminal proceedings.

We interpret this in a manner consistent with the applicable standard in a constitutional challenge to a public defense system in which injunctive relief is sought, which is: "the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law." While Appellants must prove the allegations of at least one of the named plaintiffs whose claims formed the basis of standing, Appellants do not otherwise need to prove individual harm to prevail. Although other specific instances of past or current individual harm are highly probative of future risks of harm, and not to be discounted for their persuasive weight, such proof is neither an express element of the standard nor the only way to meet the standard. *Lyons,* 461 U.S. at 102. Accordingly, we hold that structural evidence, such as statistics and national standards, can also be probative of the existence of systemic denials of counsel and may suffice, if the trier of fact is persuaded by a preponderance of the total evidence presented at trial.

Likewise, we hold that Appellants need not establish harm in each of Idaho's 44 counties to prevail. Again, while the probative value of evidence demonstrating specific examples of wide-spread deficiencies throughout the 44 counties (or even a significant portion thereof) is not to be discounted for its persuasive weight, such evidence is not required. Appellants may attempt to prove substantial harms to members of the certified class are likely, based on structural deficiencies attributable to the State and the PDC in the system as a whole.

This decision only sets forth the applicable standards by which the respective sides must prove their cases—we have not dictated how they must do so. As with all lawsuits, the responsibility ultimately rests upon the skill of the attorneys involved to strategically present their evidence in a manner they believe will most effectively persuade the trier of fact.

Chief Justice BEVAN and Justices BURDICK, BRODY and STEGNER **CONCUR.**